AMERICAN MERCANTILE EXCHANGE *vs.* A. G. BLUNT.

Penobscot.    Opinion November 19, 1906.

*Contracts.    Construction.    Legal contracts made illegal by subsequent statute.    Effect of such change stated.    Statute 1899, chapter 112.    R. S., chapter 130, section 7.*

When a contract is partly written and partly oral, the written and the oral parts must be construed together in determining what the whole contract expresses.

When any material part of an entire contract which was legal when made, becomes illegal by reason of a statute subsequently enacted, such contract is thereby wholly terminated as soon as the statute takes effect although the time specified in the contract for its performance has not then fully expired.

When a contract legal at its inception becomes illegal by subsequent statutory enactment, no action can be maintained on such contract for a failure to continue to perform the conditions of such contract after the illegality has attached.

But while it is true that a contract which was legal at its inception may become illegal by subsequent statutory enactment, yet it does not follow

that the acts done under the contract before the enactment of the statute are illegal. In such case the statute puts an end to the contract and no recovery can be had thereon for non-performance after the time when the contract is thus terminated.

The plaintiff and the defendant made a contract which was partly written and partly oral, wherein it was stipulated, among other things, that the plaintiff should employ its "system" in the collection of claims placed in its hands by the defendant. This contract was a continuing agreement and was intended to be operative until the same was cancelled by the parties or abrogated by law. The parties did not cancel the same. It was a part of the plaintiff's "system" that when judgments had been obtained against debtors, it would advertise such judgments for sale by public posters. By a statute subsequently enacted such advertising was made illegal. *Held :* (1) that the contract was an entire contract ; (2) that the contract being an entire contract was wholly terminated as soon as the statute took effect ; (3) that the plaintiff cannot recover from the defendant for non-performance of the conditions of the contract after the time when the statute went into effect.

On report.   Judgment for defendant.

Assumpsit on a contract made November 24, 1897, by the plaintiff corporation, a collection agency, and the defendant in relation to the collection of claims placed in the hands of the plaintiff by the defendant. The plaintiff alleged that the defendant had failed to perform his part of the contract and that in consequence of this failure the defendant owed the plaintiff $75.00 for subscriptions. The action was brought to recover this sum of $75.00.

The writ was dated May 5, 1905. Plea, the general issue with the following brief statement : "And for brief statement defendant further says : That the alleged several promises claimed in the declaration to have been made by the defendant were not made within six years before the commencement of said suit."

Tried at the April term, 1906, of the Supreme Judicial Court, Penobscot County. At the conclusion of the testimony, the case was "reported to the Law Court for determination upon so much of the evidence as is legally admissible."

The case appears in the opinion.

*T. P. Wormwood,* for plaintiff.

*Martin & Cook,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, PEABODY, SPEAR, JJ.

SPEAR, J.   This action is based upon a contract wherein the plaintiff avers that the defendant has failed of performance on his part and in consequence of such failure, is indebted to the plaintiff in the sum of $75.   The essential part of the contract under which the plaintiff claims is as follows:

### "AMERICAN MERCANTILE EXCHANGE.

#### Incorporated Nov. 24, 1897.

"In consideration of an annual contract in above Agency, I hereby agree to pay said Agency, or order, all sums of money as collected out of accounts placed in said Agency's hands by me, whether such collections or settlements are made through said Agency's office or by me through my office or by any other person in my behalf, until the same shall amount to Twenty Dollars, and I further agree to send to the said Agency on or before ten days from date, ten accounts, otherwise the payment of Twenty Dollars shall become due and payable to said Agency, or order, on demand."

This agreement was properly executed by the plaintiff and defendant.

### "TO AMERICAN MERCANTILE EXCHANGE.

"We hereby agree to subscribe to your Exchange under the following special terms and conditions.

"1.   You will employ *your system* to collect all claims we may place in your hands, suing where you deem advisable, and using legal means to enforce payment from debtors in any part of the United States and Canada, and all such claims shall be subject to our control or withdrawal; unless legal action has been taken, and all debts that may be advertised for sale shall be held at the figures quoted by us."

It will be observed by the use of the language in the first clause of this stipulation "you will employ your system to collect all claims," etc., that the written contract herein set forth did not state or contain all the elements of the contract.   What the plaintiff's system

above alluded to was, is not stated.   The testimony, however, fully describes the " system " employed by the Agency in the collection of accounts.   In answer to the question, " You have stated that when you went to Mr. Blunt, you explained to him the method of the Agency.   Now will you explain to us what that method was ?" The agent of the plaintiff who executed the contract answered in detail as follows :   " At that time the method was to take the list of claims on a blank form, collecting ten cents for each claim to cover postage.   A series of four letters were employed by the Agency, the first notifying that the account was due and unpaid, and asking them to call on their creditor and make some settlement, and informing them at the same time that the Agency in no case handled the money.   After a certain length of time which shows on the list, I can't remember now, a second letter was sent informing them of the fact that they who did not pay would be reported to the trade if it was still left unpaid.   After a certain length of time a third one was sent informing them that they would be sued if it was not paid, and a fourth one that when judgment was obtained, the account would be advertised for sale by public posters, and enclosing them a copy of one of the posters that had been already published."

This "system," the terms of which were not incorporated in the written contract, nevertheless, in view of the purposes and object of the defendant, became, by the specific written allusion to it, a material and important feature in the performance of the contract on the part of the plaintiff.   The defendant in the written stipulation, prescribing its duties, required that the plaintiff should use its " system."   Its " system " at the time the contract was executed, was explained by the plaintiff's agent as above set forth.   When so explained, the terms of his interpretation became as much a part of the contract as though they had been contained in a separate written document.   Therefore, the whole contract of the parties, or so much of it as is necessary to the decision of this case, is contained in the written clauses before quoted in this opinion, and the explanation of the "system" as made by its agent to the defendant; that is, the written and the oral parts of the contract are to be construed together in determining what the whole contract expressed.

This contract was entire, and constituted a continuing agreement and was binding upon the defendant to pay his subscription yearly unless abrogated by consent of the parties or operation of law. There is no pretence that the contract was mutually cancelled, but the defendant avers that its further performance was made illegal by the enactment of chapter 112, Public Laws of 1899, which went into effect April 16, 1899, seven months before the maturity of the second year's subscription. By the contract the subscription was not due until the end of the year. This act is now incorporated in chapter 130, sec. 7, of the Revised Statutes, as follows: "No person, firm or corporation, shall publicly advertise for sale in any manner whatever, or for any other purpose whatever, any list or lists of debts, dues, accounts, demands, notes or judgments, containing the names of any or all of the persons who owe the same. Any such public advertisement containing the name of but one person who owes as aforesaid, shall be construed as a list within the meaning of this section. Any person, firm or corporation, violating the provisions of this section, shall be liable in an action of debt, to a penalty not exceeding one hundred dollars, and not less than twenty-five dollars, to each and every person, severally and not jointly, whose name appears in any such list."

It is clear that this statute when it took effect April 16, 1899, absolutely prohibited the plaintiff from using that part of its "system" wherein it had stipulated that accounts would be advertised for sale by public poster. It is presumed that the plaintiff did not violate this statute and did not, subsequently to the date when it took effect, post any list of delinquent debtors. Therefore the case stands as if the plaintiff on the 16th day of April, 1899, had ceased to perform its contract in respect to posting lists of debtors' names and advertising the judgment for sale. While the plaintiff's contract as to the method of advertising does not specifically state that the posters shall contain the name of the debtor, yet the only inference to be derived from the language used clearly sustains that conclusion.

But the full performance of its contract was a condition precedent to the right of the plaintiff to recover the annual payment agreed upon, whether the non-performance was caused either by the fault

of the plaintiff, by impossibility, as by an act of God, or by a statute prohibiting performance. Upon this point the circuit court of the United States for the district of Pennsylvania in *Odlin* v. *Insurance Company of Pennsylvania*, Federal Cases, Vol. 18, No. 10433, says : " It is a general principle of law that where a contract is lawful when made and a law afterwards renders performance of it unlawful, neither party to the contract shall be prejudiced and the contract is to be considered at an end." This does not mean that a contract legal at its inception becomes illegal by subsequent statutory prohibition as to acts done before the enactment of the statute, but that the statute puts an end to the contract and there can be no legal recovery by the plaintiffs even if it should perform the unlawful acts, as it is contrary to the policy of the law to permit a party to recover for the performance of his own illegal acts or benefit by his own wrong. The law, however, excuses the plaintiff from performing its contract and releases it from liability to damages for non-performance, but it does not leave it in a position to maintain an action for recovery upon an entire contract, the performance of any part of which is prohibited, even if performed.

In *Greenough* v. *Balch*, 7 Maine, 461, the court fully approved of this rule of law and says: "Nor are we disposed to find fault with the doctrine, that where the consideration, or a part of it is malum prohibitum, it violates and invalidates the promise, as much as if it had been malum in se; both being unlawful, and neither entitled to favor or indulgence."

Shaw, C. J., 3 Cush. 448, in discussing the status of illegal contracts says : " The law will not lend its aid to carry into effect an illegal contract, if it be executory, nor to restore the party who has paid money on it, if executed."

In *Goodwin* v. *Clark*, 65 Maine, 280, it was held : " A person cannot recover for his personal services, portions of which are rendered in an unlawful employment, the contract being an entirety."

In *Bishop* v. *Palmer*, 146 Mass. 469, the court say : " As a general rule where a promise is made for one entire consideration, a part of which is fraudulent, immoral, or unlawful, and there has been no apportionment made, or means of apportionment furnished

by the parties themselves, it is well settled that no action will lie upon the promise." But these propositions are elementary. While these two cases do not involve the same state of facts presented in the case at bar, yet by analogy, they are clearly applicable. In the cases cited, it is held that when any stipulation of an entire contract is illegal, the contract cannot be enforced. In the case at bar the contract is entire and a part of it became illegal, malum prohibitum, at once upon the effect of the statute. The advertisement of a single account for sale, however soon after the statute became a law, would have subjected the plaintiff to the penalty prescribed. Therefore if the plaintiff during the second year of the contract, and before it was performed, was prohibited by law from the performance of any material stipulation, the entire contract for the year failed and it cannot recover even for the part performed.

For the third and subsequent years for which it has brought suit the prohibited part of the contract was illegal from the beginning of the year and no recovery can be had for any of these years.

Under the contract the balance of the first year's subscription $11.14 is barred by the statute of limitations.

*Judgment for the defendant.*