**Lilia TWOMBLY, Plaintiff,**

v.

**ASSOCIATION OF FARMWORKER OPPORTUNITY PROGRAMS, Defendant.**

No. Civ. 98–246–B.

United States District Court, D. Maine.

Aug. 12, 1999.

Robert J. Stolt, Lipman & Katz, Augusta, Maine, for plaintiff.

Kevin M. Cuddy, Cuddy & Lanham, Bangor, Maine, for defendant.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

Plaintiff Lilia Twombly ("Plaintiff"), a Maine resident, brings this diversity action against Defendant Association of Farmworker Opportunity Programs ("Defendant"), a Virginia corporation. She alleges that Defendant, for whom she worked in her capacity as an AmeriCorps participant, breached a contract by failing to provide her with health insurance and workers' compensation benefits. Before the Court is Defendant's Motion for Summary Judgment. For the reasons explained below, Defendant's Motion is GRANTED.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). Facts may be drawn from "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." Fed.R.Civ.Proc. 56(c). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

## II. BACKGROUND

The relevant facts are not in dispute. Late in 1994, Plaintiff accepted a position as a full-time AmeriCorps participant within Defendant's National Farm Worker Service Program. Her term of service was to run from January 8, 1995 through December 15, 1995, during which time she was to conduct pesticide safety training for farm workers. (Def.'s Ex. B.) Within Maine, the Training and Development Corporation ("TDC"), a non-profit corporation that conducts job training programs for migrant farm workers and other types of workers, was a host site for AmeriCorps programs. TDC provided work space to Defendant's AmeriCorps participants, including Plaintiff. Although originally assigned to TDC's Ellsworth office, Plaintiff was working out of TDC's Bangor office in June of 1995.

On or about March 23, 1995, Plaintiff executed a two-page contract with Defendant entitled "Association of Farmworker

Opportunity Programs' AmeriCorps Program Member Service Agreement" ("Agreement"). (Mull Aff. Ex. A.) In this document, Plaintiff agreed, among other things, to provide a certain number of hours of pesticide safety training to agricultural workers. (Mull Aff. Ex. A.) Defendant in turn agreed, among other things, to provide Plaintiff with a stipend and certain benefits including "health and medical coverage, child care if needed, [and] worker's compensation." (Mull Aff. Ex. A.) Plaintiff claims that at the time this contract was executed, these terms were reiterated orally to her by someone, presumably a person employed by Defendant.

Defendant enrolled Plaintiff in a health insurance policy issued by Allianz/SRC. The policy provided for a maximum payout of $10,000.00. Eighty-five percent of the premiums for the policy were paid for by Defendant through grant funds it received from the Corporation for National and Community Service (CNCS),[1] and fifteen percent of the premiums for the policy were paid for by TDC.

Several months into her term of service, on June 16, 1995, Plaintiff reported to her office in Bangor, Maine. She then proceeded to a meeting in Houlton, Maine, concerning an upcoming pesticide training demonstration. At the conclusion of the meeting, Plaintiff headed to her home in Lincoln, Maine, via Interstate 95, and was involved in a serious automobile accident. She suffered severe injuries, including brain injuries and a loss of substantial functioning, and apparently incurred medical expenses in an unspecified amount.

Plaintiff submitted a claim to Allianz/SRC, and it paid out the maximum allotment under the policy, $10,000.00.

In 1997, Plaintiff filed Petitions to Award against Defendant and TDC with the Maine Workers' Compensation Board ("Board"). A hearing on those petitions was held on March 10, 1998. (Def.'s Ex. A.) On October 28, 1998, the Board issued a decision dismissing Plaintiff's petition against Defendant and denying Plaintiff's petition against TDC.[2] (Def.'s Ex. C at 8.) With respect to Plaintiff's petition against Defendant, the Board concluded that although Plaintiff constituted an "employee" under the Maine Workers' Compensation Act of 1992, Me.Rev.Stat.Ann. tit. 39–A, §§ 101–909, that Act was preempted by the federal National and Community Service Act, 42 U.S.C. §§ 12501–682, which states that an AmeriCorps participant is not to be considered an "employee." (Def.'s Ex. C at 7–8.) Plaintiff did not appeal the Board's decision. (Chute Aff.) Defendant has never paid workers' compensation benefits to Plaintiff.

Plaintiff filed a Complaint in this Court on December 17, 1998, asserting that Defendant breached the Agreement by failing to provide her with health insurance and workers' compensation benefits. She alleges damages including, but not limited to, medical bills, lost wages, and permanent impairment. On March 4, 1999, Defendant moved the Court to dismiss Plaintiff's Complaint, or in the alternative, to grant summary judgment. The Court denied the Motion to Dismiss and, in accordance with the Magistrate Judge's Order of March 10, 1999, declined to rule on the Motion for Summary Judgment until Plaintiff had an opportunity to submit a discovery request. The Court later denied the Request for Discovery filed by Plaintiff and the parties submitted appropriate memoranda on the pending Motion for Summary Judgment.

## III. DISCUSSION

### A. Health Insurance

Defendant contends it is entitled to summary judgment because the phrase

---

1. The CNCS is a federal government corporation that manages national service programs.

2. With respect to her claim against TDC, the Board found that Plaintiff had failed to prove that she was an employee of TDC at the time of her accident. (Def.'s Ex. C. at 8.)

"health and medical coverage" is unambiguous and because it provided Plaintiff with "health and medical coverage" in the form of coverage under an Allianz/SRC policy that ultimately issued her the policy limit of $10,000.00.

Plaintiff responds by referring the Court to the National and Community Service Act ("NSCA"), 42 U.S.C. §§ 12501–682, which governs the administration and operation of AmeriCorps programs. Section 12594 of the NSCA provides that:

> A State or other recipient of assistance under section 12571 of this title shall provide *a basic health care policy* for each full-time participant in a national service program carried out or supported using the assistance, if the participant is not otherwise covered by a health care policy. Not more than 85 percent of the costs of a premium shall be provided by the [CNCS], with the remaining cost paid by the entity receiving assistance under section 12571 of this title. The [CNCS] shall establish minimum standards that all plans must meet in order to qualify for payment under this part, any circumstances in which an alternative health care policy may be substituted for the basic health care policy, and mechanisms to prohibit participants from dropping existing coverage.

42 U.S.C. § 12594 (1994) (emphasis added). Relying on this provision,[3] Plaintiff argues that Defendant, an AmeriCorps grantee arguably subject to Section 12594, was obligated to provide her, an AmeriCorps participant, with a "basic health care policy," the minimum terms of which have apparently been defined by the CNCS. More specifically, Plaintiff asserts

that the existence of minimum standards governing health insurance coverage of AmeriCorps participants introduces an alternative interpretation of the words "health and medical coverage" and creates an ambiguity in the Agreement that cannot be resolved on the record before the Court. The Court finds this argument unpersuasive.

■ In this diversity case, the parties appear to be in agreement that Maine law applies. Under Maine law, whether contract language is ambiguous is a question of law. *See Fitzgerald v. Gamester,* 658 A.2d 1065, 1069 (Me.1995). "Contract language is ambiguous when it is reasonably susceptible to different interpretations." *Fitzgerald,* 658 A.2d at 1069. If contract language is ambiguous, the Court may turn to extrinsic evidence in an attempt to resolve the ambiguity. *See id.* If the contract is unambiguous, its interpretation is a question of law to be decided based on the plain meaning of the language and an examination of the four corners of the document, without resort to extrinsic evidence. *See People's Heritage Sav. Bank v. Recoll Management, Inc.,* 814 F.Supp. 159, 162 (D.Me.1993).

The Court concludes that the phrase "health and medical coverage" is unambiguous. Plaintiff's own submissions to the Court reflect the parties' common understanding at the time the Agreement was executed that the language at issue contemplated nothing other than "health insurance." (Pl.'s Compl. ¶¶ 5, 10, 11; Pl.'s Resp. Def.'s Mot. Dismiss at 2; Pl.'s Resp. Def.'s Mot.Summ.J. at 2–3; Twombly Aff. at 1–2.) Significantly, Plaintiff does not allege in her Affidavit that she understood the term "health and medical coverage" to

---

**3.** The related federal regulation states:

(1) Grantees must provide to all eligible participants who meet the requirements of paragraph (b)(2) of this section health care coverage that—

(i) Provides the minimum benefits determined by the [CNCS];

(ii) Provides the alternative minimum benefits determined by the [CNCS]; or

(iii) Does not provide all of either the minimum or the alternative minimum benefits but that has a fair market value equal to or greater than the fair market value of a policy that provides the minimum benefits.

45 C.F.R. § 2522.250(b) (1998).

refer to anything more specific than "health insurance." She merely states that she "was told she would receive health insurance if [she] became ill or injured," and that she "signed the Agreement in reliance upon [Defendant's] promises to provide health insurance." (Twombly Aff. ¶¶ 2–3.) "Health insurance" is defined as "[i]nsurance against expenses incurred through illness of the insured." American Heritage Dictionary 599 (2d College ed.1991).

Nonetheless, Plaintiff contends that the phrase "health and medical coverage" is ambiguous because Section 12594 of the NCSA may mandate that Defendant provide a particular type of health insurance to its AmeriCorps participants, perhaps a type other than the Allianz/SRC policy in which it enrolled Plaintiff. This argument reveals Plaintiff's actual grievance *not* to be that Defendant breached the Agreement by "not provid[ing] health insurance ... to [her]," (Pl.'s Resp. Def.'s Mot. Summ.J. at 2.), but rather that, in her estimation, *the extent of coverage afforded* under the Allianz/SRC policy selected by Defendant was insufficient.

■ There is no question that the Agreement does not specify the precise contours of the "health and medical coverage" to be provided to Plaintiff. At the same time, the absence of such specifications, and the fact that Plaintiff was ultimately dissatisfied with the parameters of the Allianz/SRC policy, do not render the plain language of the Agreement ambiguous. *See Blackie v. State of Maine*, 75 F.3d 716, 721 (1st Cir.1996) ("[A] contract is not ambiguous merely because a party to it, often with a rearward glance colored

by self-interest, disputes an interpretation that is logically compelled.... 'Nor must a contract negate every possible construction of its terms in order to be unambiguous.' ") (citations omitted). Moreover, it is not the Court's role to enlarge or diminish the terms of the contract in an effort to create a "new contract" for the parties. *See Tinker v. Continental Ins. Co.*, 410 A.2d 550, 554 (Me.1980).

■ Even if Plaintiff is correct that the health insurance Defendant provides to its AmeriCorps participants is subject to minimum standards promulgated by the CNCS, and even if the Allianz/SRC policy in which Defendant enrolled Plaintiff was not in compliance with those minimum standards, these considerations have no bearing on whether the phrase "health and medical coverage" is ambiguous. Only *after* the Court identifies an ambiguity may extrinsic evidence be considered to ascertain the intention of the parties. *See Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me.1983). While Defendant's lack of compliance with CNCS minimum standards may give rise to a cause of action,[4] it does not give rise to the sole cause of action advanced by Plaintiff in this case, breach of contract.[5] Plaintiff does not dispute that Defendant promised to provide her with "health and medical coverage," that Defendant enrolled her in a health insurance policy issued by Allianz/SRC, that Defendant paid a portion of the premiums for that policy, and that after her accident, Allianz/SRC paid $10,000.00 toward her medical expenses—the policy limit. In other words, Defendant promised to provide Plaintiff with health insurance, and it did just that. In the wake of a tragic event, Plaintiff under-

---

4. The NCSA does not appear to incorporate an express remedial provision through which an AmeriCorps grantee's alleged failure to comply with CNCS standards might be addressed. The Court does observe that Section 12636(f)(1) provides that an AmeriCorps participant may file a grievance "concerning projects that receive assistance under this subchapter." 42 U.S.C. § 12636(f)(1).

5. Plaintiff suggests that Defendant should have presented evidence of its compliance with the minimum standards referenced in Section 12594, and, in the absence of such evidence, urges the Court to infer that the Allianz/SRC policy selected by Defendant was not in compliance with those standards. Defendant has no such burden and the Court will not make that inference.

standably was troubled to learn that only $10,000.00—a fraction of what presumably were much greater expenses—was covered by the Allianz/SRC policy. This, however, does not mean that Defendant breached the Agreement.

## B. Workers' Compensation

■ Defendant argues that Plaintiff's breach of contract claim relating to workers' compensation [6] fails because (i) the claim is barred by res judicata, and (ii) the Board's determination that the NCSA preempts the Maine Workers' Compensation Act of 1992 ("MWCA") relieved it of any contractual obligation it had to provide Plaintiff with workers' compensation benefits. Because the Court finds Defendant's second position dispositive, it will not evaluate the first.

Again, with respect to this claim, the facts are undisputed. The Agreement states that Defendant will provide Plaintiff with "worker's compensation." After her accident, Plaintiff filed a Petition to Award against Defendant with the Board. This petition was dismissed upon the Board's determination that the NCSA, a federal law that excludes AmeriCorps participants from classification as "employee[s]," preempted the MWCA. However one characterizes the Board's decision (jurisdictional versus on the merits), its clear import is that Plaintiff cannot recover Maine workers' compensation benefits. Defendant has never paid any workers' compensation benefits to Plaintiff.

Defendant cites *American Mercantile Exch. v. Blunt*, 102 Me. 128, 66 A. 212, 214 (1906) for the proposition that no breach of contract can occur where a party's failure to perform is caused not by its own doing, but by the intervention of the law. At a minimum, *American Mercantile* indicates that under Maine law, where a party is prohibited by law from performing a material element of the contract, the contract is rendered illegal. *American Mercantile*, 66 A. at 214. While that case is not completely analogous to the one at bar, its holding echoes the substance of Section 264 of the Restatement, which provides that "[i]f the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made." [7] Restatement (Second) of Contracts § 264 (1981). The comment to this section explains that "[i]t is a 'basic assumption on which the contract was made' that the law will not directly intervene to make performance impracticable when it is due. Therefore, if supervening governmental action prohibits a performance or imposes requirements that make it impracticable, the duty to render that performance is discharged...." Restatement (Second) of Contracts § 264 cmt. a (1981). In this case, the Court is satisfied that the Board's ruling discharged Defendant's contractual duty to provide Plaintiff with workers' compensation benefits, and thus there was no breach. [8]

---

6. Plaintiff's Complaint speaks of "workers' compensation insurance coverage" and "workers' compensation benefits." (Pl.'s Compl. ¶ 11.) Her Response, however, makes clear that she solely is challenging her non-receipt of benefits. (Pl.'s Resp. Def.'s Mot. Summ.J. at 4–5.)

7. Although the Maine Law Court has not explicitly adopted Section 264, it has invoked Section 261, the general provision relating to impracticability, to which Section 264 is closely related. *See Bouchard v. Blunt*, 579 A.2d 261, 263 n. 3 (Me.1990).

8. Plaintiff did not address Defendant's discharge argument in her Response to the Motion for Summary Judgment. Rather, she proposed that Defendant's promise to provide "worker's compensation" constituted a contract for "quasi-compensation benefits." This argument is unconvincing. Contracts for "quasi-compensation benefits" are private contracts in which the employer agrees to pay the employee, in the event of injury, "a scale of benefits incorporated into the contract by reference to the compensation act of some state." *See* Arthur Larson, The Law of Workmen's Compensation 16–174 (1994). No language in the Agreement references the com-

## IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment is GRANTED.

*SO ORDERED.*

pensation statute of Maine or of any other state. Hence, by definition, the Agreement is

not a "quasi-compensation benefits" contract.