# United States Court of Appeals
## For the First Circuit

No. 99-2063

LILIA TWOMBLY, f/k/a LILIA MAJERCZYK,

Plaintiff, Appellant,

v.

ASSOCIATION OF FARMWORKER OPPORTUNITY PROGRAMS,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge]

Before

Selya, Boudin, and Lynch,

Circuit Judges.

David M. Lipman, with whom Karen E. Lipman and Lipman & Katz, P.A. were on brief, for appellant.
Mark K. McDonough, with whom Cuddy & Lanham was on brief, for appellee.

May 16, 2000

**LYNCH, Circuit Judge**. In this diversity action the district court entered summary judgment against Lilia Twombly, an AmeriCorps participant, on her breach of contract claims against her AmeriCorps contracting agency, the Association of Farmworker Opportunity Programs (AFOP). Twombly claimed that AFOP failed to provide her with "health and medical coverage" and "worker's compensation" as recited in her contract. We affirm summary judgment on the health coverage claim and reverse on the workers' compensation claim. Resolution of the latter claim involves exploration of the Restatement (Second) of Contracts provisions excusing performance because of impracticability caused by governmental regulation.

## I.

Twombly had a contract with AFOP to run pesticide safety programs for farm workers from January 8, 1995, through December 15, 1995. On March 23, 1995, she executed a two page contract with AFOP, under which AFOP agreed to provide her with a stipend and benefits including "health and medical coverage, child care if needed, [and] worker's compensation." AFOP enrolled her in a health insurance policy issued by Allianz/SRC, which had a maximum payout of $10,000. AFOP paid 85% of the premiums; the Training and Development Corporation (TDC), the host agency for AFOP in Maine, paid the remaining 15%.

For her part, Twombly provided the services she was required to provide under the contract. Participants such as Twombly had full-time work assignments averaging 40 hours per week and were paid stipends at an annual rate of $7,650 in exchange for their service. Twombly was the single parent of a seven-year-old child and relied on AFOP's promises to provide health insurance and workers' compensation.

On June 16, 1995, Twombly was in a serious automobile accident on Interstate 95 while heading back from a training demonstration in Houlton, Maine. She suffered severe injuries that resulted in a substantial loss of physical and mental functioning. The health insurer paid out the $10,000 maximum. Twombly's plight is described in another opinion arising out of her accident. See Twombly v. AIG Life Ins. Co., 199 F.3d 20, 21-23 (1st Cir. 1999).

In 1997, Twombly filed an application for workers' compensation with the Maine Workers' Compensation Board. On October 28, 1998, the Board dismissed the petition against AFOP. As to AFOP, the Board concluded that while Twombly was AFOP's employee under Maine workers' compensation law, Maine law was preempted by the National and Community Service Act of 1990 (NCSA), 42 U.S.C. § 12501 et seq. The NCSA states that an AmeriCorps participant such as Twombly "shall not

be considered to be an employee of the program in which the participant is enrolled." <u>Id.</u> § 12511 (17).[1] Twombly then brought this suit.

**II.**

At the trial court, Twombly argued that the contract was ambiguous as to the scope of the health insurance AFOP was required to provide. She also said that resolution of the ambiguity required reference to certain federal minimum standards, specifically those under the NCSA. The relevant provision states:

> A State or other recipient of assistance under section 12571 of this title shall provide a <u>basic health care policy</u> for each full-time participant in a national service program carried out or supported using the assistance, if the participant is not otherwise covered by a health care policy. Not more than 85 percent of the cost of a premium shall be provided by the [Corporation for National and Community Service (CNCS)], with the remaining cost paid by the entity receiving assistance under section 12571 of this title. The [CNCS] shall establish <u>minimum</u> standards that all plans must meet in order to qualify for payment under this part, any circumstances in which an alternative health care policy may be substituted for the basic health care policy, and mechanisms to prohibit participants from dropping existing coverage.

42 U.S.C. § 12594(d)(1) (emphasis added); <u>see also</u> 45 C.F.R. § 2522.250(b) (requiring grantees to provide eligible participants with minimum health benefits).

_____

[1]    The Board denied the petition against TDC on the ground that Twombly was not an employee of TDC.

The district court concluded that the phrase "health and medical coverage" was unambiguous and that Twombly was in fact provided the health insurance required by the contract, so AFOP did not breach the contract. The district court determined that the NCSA had no bearing on whether the contract was ambiguous, and that any failure to comply with the CNCS minimum standard may or may not give rise to a cause of action, but that that was a separate matter from breach of contract.

In response to Twombly's claim for workers' compensation, AFOP argued that the claim for workers' compensation was both barred by res judicata and preempted by federal law. AFOP also argued that its performance was excused because of legal impossibility. The court rested its grant of summary judgment for AFOP on the last ground, finding that under § 264 of the Restatement (Second) of Contracts there was an intervention of federal law that made performance impracticable and therefore discharged any duty. See Restatement (Second) of Contracts § 264 cmt. a (1981). The district court also relied on American Mercantile Exchange v. Blunt, 66 A. 212 (Me. 1906), in reaching this conclusion.

## III.

Our review on summary judgment is de novo.  See National Foreign Trade Council v. Natsios, 181 F.3d 38, 49 (1st Cir.), cert. granted, 120 S. Ct. 525 (1999).  On appeal, Twombly argues that AFOP was not entitled to summary judgment.  She says that the district court erred in finding the contract unambiguous as it related to health coverage and granting AFOP summary judgment on the issue.  Twombly also argues that AFOP contracted to provide her with workers' compensation, either under the state system or through private purchase of equivalent coverage, and that performance of this obligation was not excused.

## A. Health Insurance

Twombly argues that the district court did not apply the principle that a contract is construed against the drafter; in any event, she says, the contract is ambiguous as to the scope of the promise to provide health insurance, and she was entitled to discovery on what AFOP intended the phrase "health and medical coverage" to mean.  She says typical health insurance policies do not contain dollar limits, and the policy that AFOP provided did not comply with the federal requirements for AmeriCorps Programs.  AFOP says, supported by affidavit, that its minimal health policy was in compliance with federal law regulating AmeriCorps, and that, in fact, the insurance was exactly what was arranged for and recommended by AmeriCorps.

The question whether contractual terms are ambiguous is, under Maine law, initially a matter of law for the court.  See

Fitzgerald v. Gamester, 658 A.2d 1065, 1069 (Me. 1995).  This case comes to us on summary judgment, and so the question of contractual meaning has a factual context.

We affirm the entry of summary judgment on the health insurance claim.  The payment of $10,000 in benefits met AFOP's contractual obligation to provide health and medical coverage.  There may be extreme cases where the health coverage provided is so minimal, say $1 worth of coverage, that it cannot be said to comply with the obligation to provide health insurance.  But that is not this case.  Further, the federal regulations required AFOP to provide "minimum" health benefits as determined by the CNCS, and the policy met that definition.  See 45 C.F.R. § 2522.250(b).  The defendants produced undisputed evidence that the insurance provided was exactly what the CNCS, which was responsible for setting the minimum benefits, arranged for and recommended.[2]

B. Workers' Compensation

The district court erred, Twombly argues, in granting summary judgment on the workers' compensation claim and in relying on Restatement § 264.  She also says it was possible for AFOP to perform even if the state denied benefits.  AFOP, she points out, could have

---

[2]    Twombly says that her requested discovery was restricted by the district court.  This is true, but most of the discovery sought was irrelevant to this issue.  The defendant's affidavit -- establishing that AFOP complied with what CNCS recommended -- was filed in support of the summary judgment motion, and plaintiff did not contest the fact asserted or seek discovery on this specific issue.  We take this fact as undisputed.

purchased the equivalent of workers' compensation insurance to meet its obligations.  The fact that AFOP purchased a workers' compensation-like policy from AIG, see Twombly, 199 F.3d at 21-22, is evidence, Twombly claims, of AFOP's intent that she be provided with such benefits.[3]  If AFOP's obligation were meant to be limited, Twombly says, then the contract would have said "worker's compensation to the extent provided by law."  Finally, Twombly says that since the Workers' Compensation Board determined it did not have jurisdiction, there is no res judicata effect because there was no adjudication on the merits.

AFOP says, citing 4 Arthur Larson, The Law of Workmen's Compensation § 87.73 (1989), that if it were the intent of the parties that AFOP privately purchase the equivalent of workers' compensation, then the contract should have explicitly said so and referred to a scale of benefits.  Further, AFOP claims that Twombly showed that she interpreted the contract to mean the standard state-operated system by filing for benefits.  (Plaintiff says this is not so; the employer could have chosen not to contest her application in the state system.)  AFOP also says that res judicata results from the unappealed Board finding.

We think the issue turns on whether the Restatement (Second) of Contracts excuses AFOP from performance of a commitment to provide

---

[3]     At the Workers' Compensation Board hearing, AFOP's witness seemed to take the position that any workers' compensation obligation could and should be satisfied by AFOP's insurer, AIG.  That issue is not before us.

workers' compensation. The commitment is unambiguous We set the factual context for discussing the Restatement issue. Based in Virginia, AFOP is a private non-profit group with national operations. AFOP is an AmeriCorps grant recipient. As such, it is, as it knew, subject to the terms of the NCSA, the federal act governing grants from the AmeriCorps program. Since 1991, the NCSA has provided that participants in an approved AmeriCorps program -- such as Twombly -- "shall not be considered employees of the program." National and Community Service Technical Amendments Act of 1991, Pub. L. No. 102-10 § 3(4), 105 Stat. 29 (codified as amended at 42 U.S.C. § 12511(17)(B)).[4] Despite this language, AFOP prepared a standard form contract for its participants, which Twombly signed in 1995. The contract promised that AFOP would provide workers' compensation. Twombly accepted the contract in reliance on that promise and performed her part of the contract by working for AFOP.

When Twombly filed for workers' compensation benefits with the state, AFOP had the choice to contest or not contest the claim. If AFOP had not contested the claim and it had been allowed, AFOP would have borne the costs of the compensation. Alternatively, if the claim

---

[4] There is no need to decide the issue of whether the federal Act provision preempts the Maine Workers' Compensation Act, as the Workers' Compensation Board held. The transcript before the Board contains evidence that the U.S. Department of Labor considers participants not to be federal employees for purposes of the federal unemployment compensation system, but leaves it to the states to determine eligibility for the state unemployment systems. Nor is there any need to decide what, if any, are the res judicata effects of that decision as to Twombly given our disposition of the matter.

for benefits had been denied (whether the claim had been contested or uncontested), AFOP could have paid Twombly workers' compensation in another form.

The provisions of the Restatement (Second) of Contracts at issue have to do with situations in which a court relieves a party from performance of an obligation because

> [a]n extraordinary circumstance may make performance so vitally different from what was reasonably to be expected as to alter the essential nature of that performance. In such a case the court must determine whether justice requires a departure from the general rule that the obligor bear the risk that the contract may become more burdensome or less desirable.

Restatement (Second) of Contracts ch. 11, introductory note at 309-10.

The analysis begins with Restatement § 261, which provides:

> Discharge by Supervening Impracticability
>
> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Id. § 261. Importantly, § 261 states "a principle broadly applicable to all types of impracticability" and "'deliberately refrains from any effort at an exhaustive expression of contingencies.'" Id. § 261 cmt. a (quoting U.C.C. § 2-615 cmt. 2). The rules stated in §§ 262-64 guide the determination whether the principle of § 261 applies in specific circumstances.

In entering summary judgment on this claim, the district court relied on the Restatement (Second) of Contracts § 264, which provides:

> Prevention by Governmental Regulation or Order
>
> If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made.

Id. § 264. This is generally thought to be an issue of law for the court, not the jury, to decide. See id. ch. 11 introductory note at 310. While Maine has not yet decided whether it will adopt this section, we assume arguendo that it will look to § 264 and this part of the Restatement for guidance. See Bouchard v. Blunt, 579 A.2d 261, 263 n.3 (Me. 1990) (referring to Restatement (Second) of Contracts § 261).

Section 264 of the Restatement provides a specific instance of the general doctrine of "Discharge by Supervening Impracticability" contained in § 261. See Restatement (Second) of Contracts § 264 cmt. a, illus. 1, 2. By the terms of its commentary, § 264 applies to supervening government actions, as does § 261. See id. § 264 cmt. a; id. § 261 (referring to performance made impracticable "after a contract is made") (emphasis added). The 1991 amendment of the NCSA cannot be supervening as to a 1995 contract. Indeed, the Restatement says that when the government prohibition already exists at the time of the making of the contract, the rule stated in § 266(1) applies. See Restatement (Second) of Contracts § 264 cmt. a ("If the prohibition or

-11-

prevention already exists at the time of the making of the contract, the rule stated in § 266(1) rather than that stated in § 261 controls, and this Section applies for the purpose of that rule as well.").

Thus, § 261 does not apply, and we turn to § 266(1).  Section 266(1) only excuses performance

> [w]here, at the time a contract is made, a party's performance under it is impracticable without his fault because of a fact of which he has no reason to know and the non-existence of which is a basic assumption on which the contract is made, no duty to render that performance arises, unless the language or circumstances indicate the contrary.

Id. § 266(1).  AFOP is not entitled to relief under § 266(1).  AFOP, an organization of national scope and the drafter of the form contract, cannot be said to be "without fault," or not to have reason to know of the definition of "participant" enacted in 1991.  See In re Estate of Zellmer, 82 N.W. 2d 891, 894 (Wis. 1957) (holding that estate was not excused from performance under Restatement where decedent should have known of lapsed premiums on insurance policy).  It is equally clear that the "fact" in question was material.  AFOP knowingly promised workers' compensation, and Twombly relied on that promise in accepting AFOP's offer.

Finally, the "language and circumstances" of the contract are such that AFOP is not excused from performance under § 266(1).  Even if AFOP were in fact ignorant of the 1991 provision -- and the evidence presented to the Workers' Compensation Board is to the contrary -- the

-12-

risks of that ignorance are better borne by AFOP than by the individual AmeriCorps participants. This is not a situation where a later law makes it illegal for a plaintiff to perform or partially perform but plaintiff still seeks to be paid the contract price, as in American Mercantile Exchange, 66 A. at 213-14, the case on which the district court relied. Rather, after entering into the contract in reliance on the promise of workers' compensation, Twombly performed her side of the contract. It would be unjust to say AFOP is excused from its obligation.[5] If AFOP did not wish to oblige itself to provide workers' compensation in any form, or to provide it if and only if the state Workers' Compensation Board approved, it could have drafted the contract accordingly.

We affirm the entry of summary judgment on the health coverage claim, reverse the entry of summary judgment on the workers' compensation claim, and remand for further proceedings. No costs are awarded.

---

[5]     The Maine Workers' Compensation Board determined that "Twombly was traveling as part of her duties . . . [at] AFOP" at the time of her injury. We take that as established. If there are any remaining issues about coverage, they may be explored on remand.