**John BOUCHARD, et al.**

v.

**John S. BLUNT, et al.**

Supreme Judicial Court of Maine.

Argued June 12, 1990.

Decided Sept. 4, 1990.

James D. Poliquin (orally), Norman, Hanson & Detroy, Portland, for plaintiffs.

Michael L. Parker (orally), E. Stephen Murray, Murray, Plumb & Murray, Portland, for defendants.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

CLIFFORD, Justice.

Plaintiffs John and Donna Bouchard appeal from the entry of a summary judgment in Superior Court (York County, *Alexander, J.*) in favor of the defendant, John Blunt, on the Bouchards' complaint seeking specific performance of an agreement to convey a lot of land in a Saco subdivision. Because the Superior Court erred in concluding that the contract was unenforceable because of a mutual mistake of fact, we vacate the judgment. Upon remand, the Superior Court must determine whether the requirement that the subdivision be served by a public sewer system, imposed as a condition of approval by the Saco Planning Board subsequent to the date of the agreement, constitutes a material change in the conditions of the agreement rendering it unenforceable.

In July 1986, the Bouchards entered into an agreement with Blunt to purchase for $30,000 a parcel of land designated as Lot # 11 in Seafields Lane, a proposed twelve-lot subdivision in Saco.[1] The purchase and sale agreement was subject to several conditions, one of which provided that the "contract is subject to Seafields Lane subdivision acceptance and full approval by the City of Saco." In June 1986, Blunt had submitted to the Saco Planning Board for approval a preliminary plan for Seafields Lane subdivision dated June 10, 1986. That plan, with which the Bouchards were familiar at the time the agreement was signed, provided for individual on-site septic systems for each lot.

In August 1986, the Planning Board granted preliminary approval of the June 10, 1986 plan. That approval, however, was subject to the condition that public sewerage be installed. Despite Blunt's efforts over the following several months to secure approval of the June 10 plan as submitted and without the condition concerning sewerage, approval was denied by the Planning Board on January 6, 1987. The Planning Board also refused to grant a waiver of the public sewerage requirement.

In December 1986, aware that approval of the Seafields subdivision plan with individual septic systems was highly unlikely, Blunt developed a revised plan for Seafields Lane which provided for public sewerage. The revised plan consisted of thirteen lots. On January 6, 1987, Blunt submitted that plan immediately following the Planning Board's rejection of the June 10 plan. The revised plan was approved on

---

1. The Bouchards benefitted from a $500 discount if another certain individual purchased a lot in the subdivision.

January 22, 1987.[2] The gross cost to Blunt of developing the subdivision served by a sewerage system as opposed to individual septic systems was increased by $105,000.

Because of the changes to the preliminary plan, Blunt refused to convey the lot to the Bouchards, who filed this action seeking specific performance of the agreement as well as damages. Upon cross-motions for summary judgment, the court granted judgment to Blunt upon the ground that the change in the subdivision plan from lots served by individual septic systems to ones with public sewerage constituted a mutual mistake of fact that rendered the contract unenforceable. This appeal by the Bouchards followed.

■■■ Parties may be relieved from the obligations imposed by contract upon the ground of a mutual mistake of fact that concerns a material element of the contract. *Interstate Indus. Uniform Rental Serv., Inc. v. Couri Pontiac, Inc.* 355 A.2d 913, 918 (Me.1976). Such a mutual mistake precludes a meeting of the minds on all the material elements of the contract. *Ouellette v. Bolduc*, 440 A.2d 1042, 1045–46 (Me.1982). The mistake, however, must relate to "the circumstances as they existed at the time the contract was formed and not subsequent developments." *Miller v. Lentine*, 495 A.2d 1229, 1231 (Me.1985). Because the installation of public sewerage was imposed as a requirement of approval by the Saco Planning Board subsequent to the date of the agreement, and because neither party had a mistaken belief at the time the contract was signed that approval had been given the plan with the individual septic systems, there was no mutual mistake of fact rendering the agreement unenforceable. *Cf. DiBiase v. Universal Design & Builders, Inc.*, 473 A.2d 875, 879 (Me.1984).

■■■ Performance of the agreement, however, was conditioned upon the subdivision's "acceptance and full approval by the City of Saco." Full approval of Seafields Lane subdivision was ultimately secured, but subject to the requirement of public sewerage. Neither the Bouchards nor Blunt contemplated that condition at the time they signed the agreement. Although imposition of the public sewerage requirement does not trigger the doctrine of impracticability of performance,[3] it does represent a change in the contract. We agree with Blunt that such a change in the conditions of the contract, if material and substantial, may relieve him, as well as the Bouchards, of the contractual obligations to which both parties originally assented. *Ouellette*, 440 A.2d at 1045. We disagree with Blunt, however, that the condition that the subdivision be served by public sewerage is *as a matter of law* so substantial and material that the agreement no longer represents the same contract to which the parties bound themselves. Rather, it is a question of fact to be determined from the agreement and the circumstances of the parties. *Zamore v. Whitten*, 395 A.2d 435, 439, 440 (Me.1978). Even though the parties have stipulated to certain facts,[4] the Superior Court did not attempt to decide whether, as a matter of fact, the subsequently imposed requirement that the subdivision be served by public sewerage

---

2. Lot # 11 on the preliminary plan of Seafields was renumbered and appears as Lot # 12 on the final plan of Seafields approved by the Planning Board.

3. Impracticability may be based on "the occurrence of an event the nonoccurrence of which was a basic assumption on which the contract was made ... unless the language or the circumstances indicate the contrary." *Restatement (Second) of Contracts* § 261, comment a (1981). Although performance does not have to be "absolutely impossible" in order for the doctrine to apply, it must be rendered more than difficult or "impractical." *Id.* comment d. Here Blunt does not contend that the public sewerage requirement is so onerous that development of the subdivision must be abandoned. The additional cost of $105,000 attributed to the installation of public sewerage can be offset, at least in part, by the proceeds of both an additional lot and the increased value of the sewer-serviced lots. Blunt cannot rely on impracticability of performance to support his refusal to convey the lot to the Bouchards.

4. The parties stipulated to certain facts in this case for the purpose of the motions for summary judgment. The stipulation provides that the facts agreed upon are not to be used in a trial of factual issues.

constitutes a material change in condition that would render the contract unenforceable. It must do so on remand. *See Lewien v. Cohen,* 432 A.2d 800, 803 (Me.1981). Moreover, if the contract is determined to be enforceable, the Superior Court must determine whether, and under what conditions, specific performance should be ordered. *See Ouellette,* 440 A.2d at 1046; *see also Damazo v. Neal,* 32 Md.App. 536, 363 A.2d 252, 256–57 (1976).

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.