STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-214

HHH, LLC,

Plaintiff,

v.

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT
AUG 04 2004
RECEIVED

ORDER

PORT HARBOR MARINE, INC.,
PORT HARBOR HOLDINGS I,
HERBERT E. TYLER, GRACE M. TYLER,
IRVING OIL CORPORATION, and
LAWYERS TITLE INSURANCE CORPORATION,

Defendants.

DONALD L. GARBRECHT
LAW LIBRARY

AUG 20 2004

Before the court the Defendants Port Harbor Marine, Inc. (Marine), and Port Harbor Holdings I (Holdings) (collectively Port Harbor), move to dismiss Plaintiff HHH, LLC's (HHH), complaint.

HHH opposes this motion and makes a cross-motion to consolidate this action with the case entitled <u>Port Harbor Marine, Inc. and Port Harbor Holdings I v. HHH, LLC</u>, CV-03-380 (Previous Action) in the Cumberland County Court.

Port Harbor and Irving Oil Corporation (Irving) object to the motion to consolidate.

Lawyers Title Insurance Coroporation (Lawyers Title) opposes the motion to consolidate.

Irving moves to dismiss Count I and Count II of HHH's amended complaint. Irving also moves for sanctions under M.R. Civ. P. 11.

HHH opposes Irving's motion to dismiss Count I and Count II, and opposes Irving's motion for sanctions.[1]

## FACTS AND PROCEDURAL HISTORY

In this case, HHH purchased 20.76 acres of land in South Portland from Irving. In early July, HHH began installing fencing along the property line. On or about July 8, 2003, Port Harbor brought the Previous Action against HHH for allegedly blocking a right of way.

On or about July 11, 2003, the Superior Court in Cumberland County, Brodrick, J., issued an order granting Port Harbor a preliminary injunction preventing HHH from installing the fencing.

In October, 2003, HHH hired new counsel for this matter. Mediation sessions which were unsuccessful were held between the parties. On or about March 22, 2004, HHH's counsel moved to continue the trial date to amend its answer and implead other parties. This order was granted by this court.

On March 30, 2004, the instant action was filed, alleging breach of contract and specific performance against Irving; breach of contract against Lawyers Title Insurance Company; quiet title, declaratory judgment, and breach of contract against Herbert E. Tyler and Grace M. Tyler; and declaratory judgment and quiet title against Port Harbor. HHH now alleges that Irving breached its agreement with HHH to terminate certain easements, and that the Tylers and Port Harbor did not fulfill its agreements with HHH to clear title to the property which HHH bought.

## DISCUSSION

### Motions to Dismiss

---

[1] HHH also cross-moved for summary judgment in its opposition to Irving's motion to dismiss. The motion for summary judgment will not be ruled upon at this time.

A motion to dismiss tests the sufficiency of the complaint. See M.R. Civ. P. 12. When reviewing a motion to dismiss, the material allegations of the complaint are accepted as true. Id. Dismissal for failure to state a claim is appropriate only where it appears beyond doubt that the plaintiff is entitled to no relief under any set of facts which he might prove in support of his claim. Dutil v. Burns, 674 A.2d 910, 911 (Me. 1996).

Port Harbor argues that the claims that HHH brings against it in this case should have been brought against it in the Previous Action under M.R. Civ. P. 13(a). HHH counters that the motion should be denied and the court should consolidate this action with the Previous Action.

Rule 13(a) provides, in pertinent part:

(1) Pleadings. Unless otherwise specifically provided by statute . . . a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .

M.R. Civ. P. 13(a). "Under principles analogous to res judicata, a defendant who fails to assert a compulsory counterclaim, as required by Rule 13(a) of the Maine Rules of Civil Procedure, 'is precluded from later maintaining another action on the claim after rendition of judgment.'" Morse Bros., Inc. v. Mason, 2001 ME 5, ¶5, 764 A.2d 267, 269 (quoting KeyBank Nat'l Ass'n v. Sargent, 2000 ME 153, ¶17, 758 A.2d 528, 534).

In this case judgment has not been rendered. In Maine state courts there is a strong policy favoring settlement and mediation. See M.R. Civ. P. 16B advisory committee's Statement. At the same time, there is also a strong policy in favor of deciding cases on the merits, rather than dismissing on procedural grounds. See Wescott v. Allstate Ins., 397 A.2d 156, 163 (Me. 1979). In this case, it appears that there was delay. This delay, however, was caused in part by the parties attempting to settle

the matter out of court. Therefore, at this time, Port Harbor's motion to dismiss will be denied.

Irving moves that this court dismiss Count I and Count II because under the doctrine of merger, the deed accepted becomes the final statement of the agreement between the parties, and the purchase and sale agreement becomes a nullity. See Bryan v. Breyer, 665 A.2d 1020, 1022 (Me. 1995). Therefore, Irving argues, no cause of action remains under the purchase and sale agreement.

HHH counters and makes a cross-motion for summary judgment against Irving. Irving has noted in its reply that it will respond to the motion for summary judgment. HHH's complaint contains allegations from both the purchase and sale agreement and the time of taking the deed which it will need to prove factually to survive summary judgment. The court will therefore deny the motion to dismiss at this time and rule upon the motion for summary judgment once the parties have filed all of the appropriate summary judgment materials. See M.R. Civ. P. 12(b).[2]

**Motion to Consolidate**

---

[2] At hearing, HHH made reference to actionable deceit. This cause of action requires:

> (1) A material representation which is (2) false and (3) known to be false, or made recklessly as an assertion of fact without knowledge of its truth or falsity; (4) made with the intention that it shall be acted upon and (5) acted upon with damage; that (6) plaintiff relied upon the representations, (7) was induced to act upon them and (8) did not know them to be false, and by the exercise of reasonable care could not have ascertained their falsity.

Horner v. Flynn, 334 A.2d 194, 203 (Me. 1975) (quoting Coffin v. Dodge, 76 A.2d 541 (Me. 1950)) overruled in part by Taylor v. Commissioner of Mental Health, 481 A.2d 139, 152-54 (Me. 1984); see also Precon, Inc. v. JRS Realty Trust, 47 B.R. 432, 439 (D. Me. 1985). It is not clear, however, that the elements of actionable deceit are plead in the plaintiff's complaint and this issue should be resolved on summary judgment. At hearing, HHH stated that it would address the issues of the easements in the purchase and sale agreement, and move to amend the complaint if necessary.

4

Under M.R. Civ. P. 42(a), this court may consolidate actions dealing with the "a common question of law or fact." It is within this court's discretion whether to allow a motion for consolidation. See Maietta v. Int'l Harvester Co., 496 A.2d 286, 290-91 (Me. 1985).

In this case, Lawyers Title argues that the court should deny the motion to consolidate because HHH's claims are not ready for determination. Lawyers Title also argues that HHH is trying to make an end run around its procedural mistakes by consolidating the actions. HHH has made no reply to Lawyers Title's opposition.

The motion to consolidate is granted. As noted above, much of the delay was caused by the parties trying to resolve the matter. As to claims against Lawyers Title, under the standard of Rule 42, and the claims pled against Lawyers Title in the plaintiff's complaint, there appears to be no reason to deny the motion. Claims against Lawyers Title were for breach of contract. A motion to dismiss or a motion for summary judgment may eliminate these claims, but that is not before the court.

**Motion for Sanctions**

Irving argues that HHH should be subject to sanctions under M.R. Civ. P. 11. Irving argues that there is no good faith basis for HHH's claims against it. See Baker's Table, Inc. v. City of Portland, 2000 ME 7, 743 A.2d 237. Irving argues that this is compounded by the fact that Irving's counsel communicated with HHH's counsel who said that they would promptly respond to Irving about dismissing their claims.

HHH argues that there are legitimate issues regarding the transaction between Irving and HHH, issues that should be resolved in the upcoming summary judgment motion. HHH further incorporates an affidavit from counsel explaining its side of the communications between counsel for Irving and counsel for HHH. HHH's counsel argues that the communication with Irving was meant to be in the nature of a

5

settlement agreement, and that there were ongoing negotiations which were apparently not resolved.

The court will reserve ruling on the motion for sanctions, but notes that HHH has been dilatory in responding to both defendants' counsel and the court in this and the Previous Action. The court notes that HHH was granted leave to file a motion to amend in the Previous Action, and has not done so (presumably to deal with these motions, but no explanation has been filed with the court). This matter of sanctions will be resolved at a later date, but counsel for HHH is warned that this matter should be dealt with promptly.

The entry is:

Defendants Port Harbor Marine, Inc., and Port Harbor Holdings I, motion to dismiss is DENIED.

HHH, LLC's Motion to Consolidate is GRANTED.

Irving Oil Corporation's motion to dismiss Count I and Count II of HHH's amended complaint is DENIED.

Irving Oil Corporation's motion for sanctions under M.R. Civ. P. 11 will not be ruled on at this time.

HHH, LLC's cross-motion for summary judgment will not be ruled on at this time.

Dated: August __ 2004

Roland A. Cole
Justice, Superior Court

DAVID SOLEY ESQ
PO BOX 9729
PORTLAND ME 04104

JOHN HOBSON ESQ
PO BOX 426
PORTLAND ME 04112

THOMAS LAPRADE ESQ
PO BOX 15215
PORTLAND ME 04112

JOSEPH SANCHEZ ESQ
5507-10 NESCONSET HWY SUITE 250
MOUNT SINAI NY 11766

ANDREW SPARKS ESQ
ONE MONUMENT WAY
PORTLAND ME 04101

STATE OF MAINE

CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-214
RAC - CUM - 10/6/2004

H.H.H., LLC,

Plaintiff,

v.

ORDER

Port Harbor Marine, Inc., Port Harbor
Holdings I, Herbert E. Tyler, Grace M. Tyler,
Lawyers Title Insurance Corp., and
Irving Oil Corporation,

Defendants

OCT 28 2004

This case comes before the court on Plaintiff H.H.H., LLC's Motion for

Summary Judgment on Counts I and II of its Complaint, pursuant to M.R. Civ. P.

56. Counts I and II are raised against Defendant Irving Oil Corporation (Irving

Oil) only. Irving Oil opposes the motion and seeks summary judgment in its

favor on both counts Irving Oil also seeks sanctions against H.H.H., LLC, under

Rule 11 of Maine Rules of Civil Procedure.

## FACTS

In May 1999, H.H.H., LLC (Plaintiff) as assignee, and Irving Oil entered

into a purchase and sale agreement for 20.76 acres of land in South Portland,

Maine. The sale was completed, and a quitclaim deed with covenants was

conveyed on August 31, 1999. On or about July 2003, a dispute arose between

Plaintiff and adjacent owners Port Harbor, concerning an alleged right of way

that Plaintiff was fencing off. A dispute arose as to the presence of easements in

favor of Port Harbor and others on Plaintiff's property.

1

In March 30, 2004, Plaintiff filed a Complaint alleging breach of contract (Count I) and specific performance (Count II) against Irving Oil, alleging Irving Oil failed to deliver the property free of encumbrances as promised in the purchase and sale agreement.[1] Irving Oil filed a Motion to Dismiss Counts I and II and moved that sanctions be imposed under M.R. Civ. P. 11. Plaintiff cross-moved for summary judgment on Counts I and II. Irving Oil opposed and sought summary judgment in its favor on both counts. On order of the Superior Court, Irving Oil's Motion to Dismiss was denied August 4, 2004.[2] Irving Oil's Motion for Sanctions under Rule 11 was not decided.

## DISCUSSION

Summary judgment is warranted:

> when the statement of material facts and the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, cited in the statement of material facts establish that there is no genuine issue of material fact and that a party is entitled to judgment as a matter of law.

Darling's v. Ford Motor Co., 2003 ME 21, ¶ 4, 825 A.2d 344,345 (citing M.R. Civ. P. 56). A genuine issue of material fact exists when enough acceptable evidence supports a factual dispute, requiring the fact finder to chose between two competing versions of the truth at trial. Blanchet v. Assurance Co. of Am., 2001 ME 40, ¶ 6, 766 A.2d 71, 73.

In this case, the parties dispute how the terms of their purchase and sale agreement interact with terms in the deed delivered by Irving Oil and accepted by the Plaintiff. Plaintiff, who is the moving party, asserts there is no issue of

---

[1] The Complaint also alleged causes of action for breach of contract against Lawyers Title Insurance, breach of contract, quiet title and declaratory judgment against adjacent owners and easement holders Herbert E. and Grace M. Tyler, and declaratory judgment and quiet title against adjacent owner Port Harbor.

[2] A Motion to Dismiss by Port Harbor Marine and Port Harbor Holdings I was also denied. In the same order, Plaintiff's dispute with Port Harbor was consolidated with this case.

2

material fact that terms in the purchase and sale agreement were breached when Irving Oil conveyed title encumbered by easements, and that Irving Oil misrepresented what was conveyed by deed when it did not include a description of all easements in the deed and on a survey map. Irving Oil asserts there is no issue of material fact that liability under the purchase and sale agreement is barred under the doctrine of merger by deed, and that no misrepresentation can be alleged when a description of all easements was included in the purchase and sale agreement, along with procedures for objecting to those easements.

I.     The Purchase and Sale Agreement

The purchase and sale agreement (P&S) was a lengthy, detailed document that included maps and attachments. Among the attachments, were Exhibit C, creating a cross-easement agreement between Plaintiff and Irving Oil, and Exhibit D, a list of thirty-four (34) separate rights and easements on the property, granted to others, including easements in favor of the Tylers and Port Harbor. (P&S at Ex. D 16(d)(e), 19, 30). A survey map was attached that did not depict the 34 easements listed in Exhibit D.

The purchase and sale agreement states that the "premises are to be conveyed by good and sufficient quitclaim deed with covenant running to Buyer according to the legal description based upon the Survey, and said deed shall convey a good clear record and marketable title thereto, **free from encumbrances, except . . . (iii) subject to the provisions of Paragraph 3(c) such matters identified on Exhibit D . "** (P&S at p.1)(emphasis added). Paragraph 3(b) states that "[t]itle to the Premises shall be deemed marketable and in compliance with the provisions of this Agreement **notwithstanding: (i) any**

3

encumbrance, lien or other matter affecting the Premises that is set forth on Exhibit D." (P&S at p. 2)(emphasis added).

Paragraph 3(c) stipulates the manner and time within which the Buyer, must object to any "encumbrances, liens or defects" affecting title to the property. If the Buyer fails to object under the terms of 3(c), "Buyer shall be conclusively deemed **to have accepted the Premises subject to any and all such encumbrances, liens and defects.**" (P&S at p. 3)(emphasis added).

II. The Deed

The deed tendered by Irving Oil and accepted by Plaintiff makes no mention of the 34 rights and easements listed in Exhibit D of the purchase and sale agreement. However, the deed conveys the premises specifically "subject to" an easement from Irving Oil to Northern Utilities (Deed at p.5), and "subject to" the cross-easement with Plaintiff (Deed at p. 6). In the purchase and sale agreement, Irving Oil promised to convey by deed "according to the legal description based upon the survey." (P&S at 1). The survey purports to show only "the exact boundaries of the Premises and the exact location of the Cross Easements" between Plaintiff and Irving Oil. (P&S at 1).

III. Merger by Deed

When a conflict arises between the terms of a contract for the sale of land and the terms of a deed, the common law doctrine of merger by deed may apply. The Law Court interprets the doctrine as providing that, "once a . . . deed is accepted it becomes the final statement of the agreement between the parties and nullifies all provisions of the purchase-and-sale agreement." Bryan v. Breyer, 665 A.2d 1020, 1022 (Me. 1995)(citation omitted). "Upon acceptance, the deed regulates the rights and liabilities of the parties." Kezer v. Mark Stimson Assocs.,

4

CUMSC-CV-97-243 (Me. Super. Ct., Cum. Cty. Oct. 1, 1998)(Cole, J.). (citing 77 Am. Jur.2d *Vendor & Purchaser*, § 286). The doctrine has several exceptions. Id. at 29. Collateral agreements in a purchase and sale contract do not merge into the deed. <u>Waterville Indus., Inc. v. Fin. Auth. of Me.</u>, 2000 ME 138, ¶ 16, 758 A.2d 986, 990. An agreement is collateral if it is not "connected with the title, possession, quantity, or emblements of the land." Id. (internal citations omitted). Thus, promises to convey title free of encumbrances, which are included in agreements connected with title, are not collateral for purposes of the doctrine of merger. Charles S. Purnell, Annotation, *Deed as Superseding or Merging Provisions of Antecedent Contract Imposing Obligations Upon the Vendor*, 38 A.L.R.2d 1310, 1315-17 (1954).

Here Plaintiff maintains that the terms of the purchase and sale agreement to convey good and marketable title, free from encumbrances, should not merge with the deed and should be enforceable against Irving Oil. Plaintiff's argument must fail, because, even should every term of the purchase and sale agreement be found enforceable, the agreement on its face clearly states that marketable title is deemed notwithstanding the 34 rights and easements listed in Exhibit D, and that the property is free from encumbrances <u>except</u> those identified in Exhibit D. The purchase and sale agreement further stipulates that failure to object to encumbrances in the manner and time set forth in the agreement shall be deemed an acceptance by Buyer of all encumbrances.

IV. Misrepresentation

Another exception to the doctrine of merger by deed is found when a buyer accepts a deed while under the influence of "mistake, fraud, or misrepresentation." 77 Am. Jur.2d, *Vendor and Purchaser* § 293 (2004). The fact

5

that the conveyance is by way of a quitclaim deed "will not relieve vendor from liability for fraudulent representations as to title. Id. (citing Atwood v. Chapman 68 Me. 38, 42 (1877) "For this exception to apply, however, the contract or deed must be induced by fraudulent misrepresentations, in which case the representation and the deed remain distinct and there is no merger." Kezer v. Mark Stimson Assocs., at 29 (citing Everett v. Gilliland, 141 P.2d 326, 332 (N.M. 1943)).

Here, the Plaintiff's knowledge of the 34 rights and easements listed in the purchase and sale agreement, the manner and time stipulated for objecting to them, and the provision stating Plaintiff accepted all encumbrances in the absence of objections, overcomes Plaintiff's suggestion that Plaintiff was deceived into relying on Irving Oil's survey map when accepting the deed. The survey map, upon which Plaintiff says it relied, expressly purported to show only the exact boundaries of the property and the cross-easement between Plaintiff and Irving Oil. Although the survey map did not show the 34 rights and easements listed in Exhibit D, descriptions of those easements in Exhibit D and references to Exhibit D in provisions regarding title and encumbrances could not have been clearer.

## V.    Rule 11 Sanctions

Maine Rule of Civil Procedure 11 states in part:

(a) . . . The signature of an attorney or party [on a pleading or motion] constitutes a representation by the signer that the signer has read the pleading or motion; that to the best of the signer's knowledge, information and belief there is good ground to support it; and that it is not interposed for delay. . . . If a pleading or motion is signed with intent to defeat the purpose of this rule, the court, upon motion or upon its own initiative, may impose on the person who signed it, upon a represented party, or upon both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred

6

because of the filing of the pleading or motion, including a reasonable attorney's fee.

M.R. Civ. P. 11(a)(2003).

The Law Court upheld Rule 11 sanctions when a pro se party filed over a dozen meritless motions in one four-month period in an effort to delay proceedings, harass the defendant, and force recusal of the judge. Estate of Ruth E. Dineen, 1998 ME 268, ¶ 11, 721 A.2d 185, 188. Similarly, the Law Court upheld Rule 11 sanctions imposed on a party who filed twenty-three affirmative defenses and eleven counter-claims, after the trial court concluded these were "interposed for delay." Fraser Employees Fed. Credit Union v. Labbe, 1998 ME 71, ¶ 9, 708 A.2d 1027, 1030.

Here Irving Oil asserts that Plaintiff brought Counts I and II of its Complaint against Irving Oil with no good faith basis and Plaintiff "clearly misrepresents" the terms of the purchase and sale agreement in its Amended Complaint. In discussions between Irving Oil and the Plaintiff, the Plaintiff represented it would document its claim against Irving Oil further or dismiss it altogether, but did neither. Plaintiff's attorney, in a deposition, states that, at the time of discussions with Irving Oil, Plaintiff was awaiting key evidence concerning the easements in question, and that their representations were pursuant to a settlement. When key evidence was not forthcoming, Plaintiff's attorney chose to proceed because "[n]either Irving's deed or its own survey identifies the existence of any of the alleged easements." Although Plaintiff may have misstated terms of the purchase and sale agreement in his Amended Complaint and may not prevail in counts I and II, Irving Oil offers no evidence that Counts I and II were completely without merit or were included and

7

pursued to impose delay. Indeed, the doctrine of merger by deed which Plaintiff sought to overcome, has been rarely applied in Maine, and has been expanded in other jurisdictions to exclude a wider range of collateral agreements. *See* § 290, 77 Am. Jur 2d, Vendor and Purchaser (2004).

**WHEREFORE** this Court **DENIES** Plaintiff H.H.H., LLC's Motion for Summary Judgment on Counts I and II, and **GRANTS** Defendant Irving Oil's Motion for Summary Judgment on Counts I and II. This court **DENIES** Defendant Irving Oil's Motion for Rule 11 Sanctions.

Date_____October 6, 2004_____

Roland A. Cole
Justice, Superior Court

8

F COURTS
nd County
OX 287
e 04112-0287

MELISSA HEWEY ESQ
PO BOX 9781
PORTLAND ME 04112

COURTS
County
287
04112-0287

THOMAS LAPRADE ESQ
PO BOX 15215
PORTLAND ME 04112

OURTS
County
87
112-0287

DAVID SOLEY ESQ
PO BOX 9729
PORTLAND ME 04104

JOHN HOBSON ESQ
PO BOX 426
PORTLAND ME 04112

JOSEPH SANCHEZ ESQ
5507-10 NESCONSET HWY SUITE 250
MOUNT SINAI NY 1176

ANDREW SPARKS ESQ
ONE MONUMENT WAY
PORTLAND ME 04101

STATE OF MAINE    STATE OF MAINE     SUPERIOR COURT
CUMBERLAND, ss.    CUMBERLAND SS     CIVIL ACTION
         CLERK'S OFFICE      DOCKET NO. CV-04-214

2005 MAY 19 P 2: 40

HHH, LLC,
     Plaintiff

        v.                            **ORDER**

Port Harbor Marine, Port Harbor Holdings,
Herbert E. Tyler and Grace M. Tyler,
Irving Oil Corporation, and
Lawyers Title Insurance Corporation,
     Defendants



This case comes before the Court on Defendant's Herbert E. Tyler and

Grace M. Tyler's Motion for Summary Judgment and Irving Oil Corporation's

Motion for Summary Judgment.

Plaintiff HHH, LLC (Plaintiff) is engaged in litigation over easements

burdening a property of about twenty acres in South Portland that Plaintiff

purchased from Irving Oil Corporation. (Irving Oil). In July 2003, Plaintiff built a

fence blocking access by way of those easements to the properties Herbert E.

Tyler and Grace M. Tyler (the Tylers), among others. Plaintiff argues that it was

deceived by Irving Oil into purchasing property subject to those easements. On

October 6, 2004, this Court granted summary judgment to Irving Oil on

Plaintiff's claims for breach of contract and specific performance. Plaintiff's

amended claims against Irving Oil are for negligent misrepresentation (Count I-

A); and fraud (Count II-A);

Plaintiff also maintains that it extinguished easements in favor of the

Tylers. Plaintiff has brought an action to quiet title as to the Tylers (Count IV); a

declaratory judgment action against the Tylers (Count V); and a breach of

contract claim (Count VI). The Tylers have counterclaimed against the Plaintiff

1

for declaratory judgment (Count I), breach of contract (Count II), nuisance (Count III) and slander of title (Count IV).

Both Irving Oil and the Tylers now move for summary judgment on Plaintiff's claims.

## STANDARD OF REVIEW

On a motion for summary judgment, the court views the evidence in the light most favorable to the party against whom judgment is sought, to decide "whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380 (citations omitted). If the record reveals no genuine issue of material fact, then a summary judgment is proper. *Curtis v. Porter*, 2001 ME 158 at ¶ 6, 784 A.2d at 21. When the moving party is the defendant, the burden rests on that party to show that the evidence fails to establish a prima facie case for each element of the cause of action. *Stewart ex rel. Stewart v. Aldrich*, 2002 ME 16, ¶ 8, 788 A.2d 603, 606.

## DISCUSSION

### a. Counts I-A and II-A.   Irving Oil.

Plaintiff again seeks to bring claims against Irving Oil for the failure of its survey map to show the Cross Street easement burdening Plaintiff's property. This Court held earlier that Plaintiff could not assert a claim of "mistake, fraud or misrepresentation" in the survey map to bar application of the doctrine of merger by deed.

1. Negligent Misrepresentation.

Count I-A in the Complaint states a claim for negligence. However, Plaintiff argues that, in its amended complaint, Plaintiff brings "a negligent

2

misrepresentation claim against Irving for its statements made in connection with the purchase and sale of real estate in South Portland."

A cause of action in negligent misrepresentation may be brought when the defendant:

> in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Chapman v. Rideout,* 568 A.2d 829, 830 (Me. 1990)(citing RESTATEMENT (SECOND) OF TORTS § 552). To overcome a motion for summary judgment, Plaintiff must provide evidence in the record showing Irving Oil supplied false information. *See, e.g. Devine v. Roche Biomedical Laboratories,* 637 A.2d 441,445 (Me. 1994)(false information on positive lab results); *Chapman v. Rideout,* 568 A.2d 829, 830 (Me. 1990)(false information on property boundaries); *Binette v. Dyer Library Ass'n,* 668 A.2d 898, 903 (Me. 1996)(silence rising to the level of false information on the presence of an environmental hazard on property); *Letellier v. Small,* 400 A.2d 371, 376 (Me. 1979)(false statement regarding results of a soil test). Silence, where the defendant had a statutory duty to disclose, can amount to supplying false information for negligent misrepresentation purposes. *Binette,* 668 A.2d at 903.

Here, Plaintiff claims that Irving Oil did not disclose the existence of the Cross Street easement benefiting other Defendants on a boundary map Irving Oil provided to show "the exact boundaries of the Premises and the exact location of the Cross Easements" between Plaintiff and Irving Oil. In the purchase and sale agreement, Plaintiff argues, Irving Oil promised to convey the property by deed "according to the legal description based upon the survey." Plaintiff also argues

3

that Irving Oil's surveyor had a duty under 1995 licensing standards to include the location of the Cross Street easement on any boundary survey map. Plaintiff maintains that it reasonably relied on the absence of the Cross Street easement on the survey map when it proceeded purchased the property, to Plaintiff's detriment.

Nothing in the record on summary judgment suggests that the map, titled "Standard Boundary Survey" and purporting to show "the exact boundaries of the Premises and the exact location of the Cross Easements" between Irving Oil and Plaintiff did so incorrectly. However, the survey map's "silence" as to the Cross Street easement could be construed as rising to the level of negligently supplying false information if Irving Oil breached a statutory obligation to show the Cross Street easement on the boundary map or otherwise failed to provide information to Plaintiff that a Cross Street easement existed.

In 1995, land surveyors had a regulatory duty to conform with Standards of Practice established by the Maine State Board of Registration for Land Surveyors.[1] The standard for field procedures required that "[a]ll easements of record or apparent easements that are visible without careful searching shall be physically located during the survey." § 12.10.8.8. Any maps based on the survey must show, "when applicable . . . rights-of-way and easements surrounding, adjoining, penetrating or severing the surveyed site." § 12.10.9.12. Thus Irving Oil's surveyor appears to be required, by licensing regulations in effect in 1995, to discover and show the Cross Street easement, an easement

---

[1] These Standards, in effect from 1983 to 2001, provided the regulatory requirements for a Standard Boundary Survey at § 12.10. Any maps must show, "when applicable . . . rights-of-way and easements surrounding, adjoining, penetrating or severing the surveyed site." § 12.10.9.12. The enabling statute for the Board's regulation is found at 32 M.R.S.A. § 13903(2)(2004).

4

running along a boundary, on any map purporting to be a Standard Boundary Survey. However, these regulatory and licensing standards govern the surveyor's statutory obligations, and not Irving Oil's.

Irving Oil did, however, have a duty to make accurate, nonmisleading representations concerning the easements burdening the property Irving Oil was conveying by quitclaim deed. Nothing in the record suggests Irving Oil failed to do so, although those disclosures were not made on the survey map, but were instead listed in detail in the purchase and sale agreement. Nothing in the record suggests Irving Oil maintained the survey map showed all easements. In fact, Plaintiff was expressly cautioned that the "legal description based upon the survey" was subject to the listed easements. Thus the "silence" of the survey map as to the Cross Street easement cannot rise to the level of misrepresentation where that information was openly disclosed to the Plaintiff elsewhere, and where Irving Oil expressly informed the Plaintiff that the survey was subject to the disclosed easements.

Summary judgment also requires that Plaintiff provide evidence in the record showing Plaintiff's justifiably relied on the survey map to show whether the Cross Street easement burdened the property, while ignoring that information in its own purchase and sale contract. Reliance is not justified "if the plaintiff knows the representation is false or its falsity is obvious to him." *Letellier v. Small*, 400 A.2d 371, 376 (Me. 1979). Here the undisputed record shows Plaintiff's reliance was unjustified where the purchase and sale agreement entered by Plaintiff referred to the survey for a legal description of the property, and then expressly cautioned that the property in the survey was "free from encumbrances except . . . subject to the provisions of Paragraph 3(c), (discussed

5

below), such matters identified on Exhibit D." Exhibit D listed as many as 34 such easements, including the Cross Street easement.

The purchase and sale agreement also expressly directed Plaintiff to conduct its own title search and to object to the Cross Street encumbrances within sixty days. Plaintiff expressly agreed that failure to object within the sixty-day period constituted a waiver of objection. Nothing in the record shows Plaintiff consulted or even saw the survey map before deciding not to object to the Cross Street encumbrance. While Plaintiff had no affirmative duty to investigate the accuracy of the survey map's location of boundaries or cross-easements with Irving Oil, the purpose for which it was offered, Plaintiff cannot claim ignorance of information concerning a Cross Street easement not shown on that map, but openly disclosed in a contract to which Plaintiff was a party.

The record on summary judgment also shows that Plaintiff properly relied not on Irving Oil, but on Plaintiff's attorney, for information on the number of easements burdening the property and the nature of those easements, and for Plaintiff's belief that easements had been or could be terminated.[2]

Thus, the undisputed record contains no evidence showing that Irving Oil was silent on the matter of the Cross Street easement, or that Plaintiff justifiably relied on a survey map claiming only to show boundaries and cross-easements with Irving Oil to conclude that the Cross Street easement did not exist or had somehow been extinguished. Because both misrepresentation and justifiable

---

[2] The Law Court noted "[t]he essence of the attorney-client relationship in title cases is the faith and trust which the client places in the representations of the attorney regarding the status of title to the property he is about to purchase. The security of knowing that the title is good and the property is free of encumbrances is what the client purchases when he retains an attorney to search title for him." *Johanson v. Dunnington*, 2001 ME 169, ¶ 9 n.3, 785 A.2d 1244, 1247 (citing *Anderson v. Neal*, 428 A.2d 1189, 1192 (Me. 1981)).

reliance are essential elements of Plaintiff's cause of action, summary judgment is porperly granted to Irving Oil on Count I-A.

## 2. Fraud

To maintain a claim of fraud, Plaintiff must establish that the defendant: (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage. *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 26, 818 A.2d 995, 1003. A plaintiff is entitled to "justifiably rely" on a misrepresentation without investigating its truth or falsity, unless the plaintiff knows it to be false or its falsity is obvious. *Id.* ¶ 29.

Here Plaintiff has not met its burden of providing evidence of the first element, that a false representation was made by Irving regarding the existence of a Cross Street easement that was fully disclosed by Irving Oil in the purchase and sale agreement. Nor has Plaintiff provided evidence of the fourth element, that the survey map was intended to induce Plaintiff into buying the property and ignoring or discounting Irving Oil's express referral to and disclosure of a Cross Street easement. Plaintiff's justifiable reliance on the survey map, the fifth element of fraud, has been addressed.

Irving Oil openly disclosed the Cross Street easement in the purchase and sale agreement. The survey map purported only to show Plaintiff the legal boundaries of Plaintiff's property and any cross-easements between Plaintiff and Irving Oil. The "legal description based upon the survey" was expressly conditioned by a list of encumbrances that included Cross Street. Plaintiff was

7

encouraged to do a title search, which would have likewise shown the same Cross Street easement expressly disclosed by Irving Oil, and Plaintiff was invited to raise objections about the Cross Street easement prior to closing. Furthermore, Plaintiff provides no evidence that it saw or referred to the survey map at any time before closing. Because Plaintiff has not met his burden of showing that Irving Oil knowingly made a false representation, intended to induce Plaintiff's reliance, or that Plaintiff justifiably relied on a false representation, judgment is granted to Irving Oil on Plaintiff's Count II-A.

**b. Counts IV-VI. The Tylers.**

1. The Picket Street Extension

Here Plaintiff and Tylers dispute an easement over a portion of Plaintiff's property called the Pickett Street Extension adjacent to property the Tylers acquired in 1995 by quitclaim deed from Breakwater Condominium Associates. In that deed, the Tylers were favored with an easement and right of way over Cross Street and over the Pickett Street Extension that ran along the Tylers' west and southwest perimeter. However, Breakwater reserved the right to terminate the easement over Cross Street and over "that portion of the Pickett Street Extension which is located northwesterly of the furthest point northwest along the common sideline of the Premises and Pickett Street Extension." This reservation of the right to terminate part of the easement passed to the Plaintiff, who did in fact exercise it in March 2003.

Plaintiff argues this effectively terminates any easement running along the Tylers' boundary with the Pickett Street Extension. Plaintiff has gone to a great deal of trouble to show that the Tylers property consists of three separate conveyances in 1984, 1993 and 1995, and to trace chains of title for all three. At

8

issue here, however, is only the easement to the last of these, the 1995 piece that runs along the Cross Street and Picket Street Extension easements. Plaintiff mysteriously argues the reservation to Plaintiff stated in the 1995 deed allows Plaintiff to terminate the easement "over Pickett Street extension to the north and west of the south eastern corner of the Tyler property," when the language of the deed says something quite different. The language of the deed, and Plaintiff's March 2003 termination effectively terminates any easement the Tylers 1995 parcel may have enjoyed along Cross Street and any easement along the part of the Pickett Street Extension that extends northwest of the northwestern-most point where the Tylers' property line and the Pickett Street Extension adjoin. That northwestern-most point is where Cross Street meets the Pickett Street Extension.

Plaintiff also argues that the Tylers may not use the easement granted in the 1995 deed to access their adjoining parcels acquired in 1993 and 1984. Plaintiff argues that the Tylers' 1993 and 1984 parcels, or perhaps the Tylers themselves are "strangers" to the 1995 easement along the Pickett Street Extension and may not benefit from it. However, the Tylers do not argue that their acquisition of the 1984, 1993 and 1995 properties are part of a unitary transaction. Nor is that argument relevant to a determination of what easement they retain benefiting their 1995 property, the only question before this Court on summary judgment.

The Tylers are arguing that the plain language of their 1995 deed entitles them to a specific and non-terminable easement along the Pickett Street Extension adjoining their property up to the intersection of Cross Street and the Pickett Street extension, the "furthest point northwest along the common sideline

9

of the Premises and Pickett Street Extension." Because the record on summary judgment, including the plain language of the deeds, creates no issue of fact as to whether an interminable easement was conveyed to the Tylers in 1995 that extends along the Pickett Street Extension to the intersection with Cross Street, Tylers are entitled to judgment as a matter of law in their favor on Plaintiffs Counts IV and V disputing that easement.

2. The December 2000 Agreement.

In December 2000, Plaintiff and the Tylers entered an agreement that stipulated:

> 1. Both parties would execute irrevocable license agreements for egress and ingress to and from Ace Ventures Group property.
> 2. If either Plaintiff or the Tylers acquired the Ace Ventures Group property that party would terminate the license agreements with Ace Ventures Group. Either party could terminate is own license agreement.
> 3. If Plaintiff purchased the Ace Ventures Group property, the Tylers would be given a release deed from Plaintiff for al claims to their 1995 property.

The Tylers and Plaintiff then executed the agreed-upon license to Ace Ventures Group on the same day. In the license agreements, the Tylers redefine the entrance and egress terms between themselves and Plaintiff. However, Ace Ventures Group never signed the license agreement. Furthermore, neither the Tylers nor the Plaintiff acquired the property from Ace Ventures Group, as anticipated. Instead, at the time the parties entered their agreement, Ace Ventures Group had already conveyed the property that was the subject of Plaintiff and the Tylers' agreement to Defendants Port Harbor Marine and Port Harbor Holdings. Nonetheless, Plaintiff now claims the Tylers have breached the agreement by not complying with the terms of the license agreement.

10

The Law Court has held that a "contract exists if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liability of each party." *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625, 631. Thus, the Law Court found a contract existed when an agreement was assented to by both sides and "embodied the essential material terms . . . including the identification of the property, the parties to the sale, the purchase price, the amount of the down payment and the type of financing. *Id.* Here any license agreement between the Tylers and Ace Ventures Group is unenforceable for lack of a signature or any unconditional manifestation of assent to it from Ace Ventures Group, the other party to its terms.

Furthermore, any agreement between Plaintiff and the Tylers relates to a subject matter, namely, property owned by Ace Ventures Group or conveyed to Plaintiff or the Tylers, that does not exist and did not exist at the time the parties entered the agreement. Thus any agreement entered by the parties concerning that subject matter rested upon a mutual mistake.

Under Maine law, "parties may be relieved from the obligations imposed by contract upon the ground of mutual mistake of fact that concerns a material element of the contract." *Bouchard v. Blunt*, 579 A.2d 261, 263 (Me. 1990). Such contracts are unenforceable because the parties' mutual mistake "precludes any meeting of the minds on all the material elements of the contract." *Id.* (citing *Oullette v. Boldac*, 440 A.2d 1042, 1045-46 (Me. 1982)). However, the mistake "must relate to the circumstances as they existed at the time the contract was formed and not subsequent developments." *Id.* (quotation omitted).

11

Here the parties entered an agreement on December 28, 2000 on the mutually mistaken belief that the property in fact conveyed to Port Harbor earlier in the month, continued to be held by Ace Ventures Group. This fact was material to their agreement creating mutual obligations between themselves and Ace Ventures Group relating to egress and ingress to Ace Ventures Group's property and the parties' property. Plaintiff and the Tylers' mistake related to the state of ownership as it existed on December 28, 2000, at the time their agreement was signed, and not to events arising afterward. Because the parties' confidential contract was based on mutual mistake, their contract was and remains unenforceable, as do the licensing agreements stemming from that contract. *Bouchard v. Blunt*, 579 A.2d 261, 263 (Me. 1990). The Tyler's Motion for Summary Judgment on Count VI of Plaintiff's complaint is therefore granted.

This Court hereby **GRANTS** Defendant Irving Oil's Motion for Summary Judgment on Counts I-A and II-A of Plaintiff HHH's Amended Complaint.

This Court **GRANTS** Defendant Herbert E. Tyler and Grace M. Tyler's Motion for Summary Judgment on Counts IV, V, and VI of Plaintiff HHH's Amended Complaint.

Date_____May 19, 2005_____          _____
                                        Justice, Superior Court

12

ANDREW SPARKS ESQ
ONE MONUMENT WAY
PORTLAND ME 04101

) *Port Harbor Marine Inc*
*, Holdings Inc*

DAVID SOLEY ESQ
PO BOX 9729
PORTLAND ME 04104

*Herbert & Grace Tulir*

THOMAS LAPRADE ESQ
PO BOX 15215
PORTLAND ME 04112

*Lawyers Title Inc*

F COURTS
nd County
ox 287
ie 04112-0287

JOHN HOBSON ESQ
PO BOX 426
PORTLAND ME 04112

*Irving Oil*

F COURTS
ind County
iox 287
ie 04112-0287

FRANK CHOWDRY ESQ
PO BOX 4510
PORTLAND ME 04112

*HHH LLC*